IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **NICOLAS MARADIAGA and** | § | |
| **RAFAEL MARTINEZ,** | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | Civil Action No. **3:10-CV-1028-L** |
| | § | |
| **INTERMODAL BRIDGE TRANSPORT,** | § | |
| **INC.,** | § | |
| | § | |
| Defendant. | § | |
| | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Defendant's Motion for Partial Summary Judgment (Doc. 114), filed July 31, 2012, and  Plaintiffs' Motion for Partial Summary Judgment (Doc. 68), filed February 7, 2012. By orders dated April 13, 2012, and August 3, 2012, the court, pursuant to 28 U.S.C. § 636(b), referred Plaintiffs' Motion for Partial Summary Judgment and Defendant's Motion for Partial Summary Judgment to United States Magistrate Judge Paul D. Stickney for hearing, if necessary, and for the United States Magistrate Judge to submit to the court proposed findings and recommendations for disposition of the motion.  The court **vacates** the aforementioned references, and, after careful consideration of the parties' summary judgment motions, briefs, responses, replies, supplemental responses, supplemental replies, appendices, competent summary judgment evidence, record, and applicable law, **grants in part and denies in part** Defendant's Motion for Partial Summary Judgment and **denies** Plaintiffs' Motion for Partial Summary Judgment.  More specifically, for the reasons explained herein, the court **denies** Plaintiffs' Motion for Partial

Summary Judgment on their declaratory judgment and truth-in-leasing claims; **denies** Defendant's Motion for Partial Summary Judgment with respect to its statute of limitations defense and its argument that IBT paid Plaintiffs 72% for work performed by Plaintiffs in accordance with their written leases; **grants** Defendant's Motion for Partial Summary Judgment to the extent it contends that Plaintiffs 72% gross contract claim should be limited to 72% of the amounts IBT charged its customers for freight and other services that were *actually performed by Plaintiffs*, not all fees for services charged to customers; and **grants** Defendant's Motion for Partial Summary Judgment with respect to Plaintiffs' declaratory judgment and truth-in-leasing claims.

## I.   Background

Nicolas Maradiaga ("Maradiaga") and Rafael Martinez ("Martinez") (together, "Plaintiffs") brought this action on May 21, 2010, against Intermodal Bridge Transport, Inc. ("IBT") and Cosco Logistics (Americas), Inc. ("COSCO").  Plaintiffs originally asserted claims of retaliation, breach of contract, and violations of the Truth in Lending Act [sic], Fair Labor and Standards Act, and Texas Payday Law against Defendants.  By order dated March 11, 2011, the court dismissed Plaintiffs' claims against COSCO on the grounds that it was not Plaintiffs' employer.  Plaintiffs subsequently amended their pleading three times.  The claims asserted in Plaintiffs' Third Amended Complaint ("Complaint"), filed on July 10, 2012, to which IBT responded on July 31, 2012, are the subject of this opinion and the parties' summary judgment motions.

In their Complaint, Plaintiffs assert claims against IBT for breach of contract and failure to comply with  49 C.F.R. § 376.12(d), (g), (h), and (l) in violation of federal truth-in-leasing regulations.  Plaintiffs also seek a declaration from the court that IBT failed to comply with the truth-in-leasing regulations set forth in 49 C.F.R. § 376.12(d), (g), (h), and (l).  Plaintiffs seeks actual

damages for amounts allegedly owed to them pursuant to their written leasing agreements with IBT and other alleged oral agreements regarding compensation, economic damages under 49 U.S.C. § 14704 for IBT's alleged violations of the aforementioned truth-in-leasing regulations under section 376.12, attorney's fees, costs, and prejudgment and postjudgment interest.

IBT is a trucking company with an office in Arlington, Texas.  IBT's customers hire it to transport, among other things, shipping containers from local rail yards to various destinations. Plaintiffs are independent contractors and owner operator truck drivers, who IBT engaged to perform hauling services for IBT's customers.  Plaintiffs own their tractors and lease them to IBT.  Martinez signed a Lease and Transportation Agreement ("LTA") with IBT on September 21, 2005, and Maradiaga signed a nearly identical LTA with IBT on July 24, 2006.  The LTAs signed by Plaintiffs are the same as those signed by all of IBTs drivers when they begin working for IBT as independent contractors.  Pls.' Mot. App. 91.

According to IBT, it charges customers differing fees depending on the services that are provided.  One fee charge by IBT, which IBT maintains is the most relevant to its drivers, is the "customer freight rate."  Def.'s Resp. App. 2, ¶ 3(a).  The customer freight rate is the fee charged by IBT to transport a loaded container and, typically, to return the empty container to its origin.  *Id.* IBT contends, and Plaintiffs dispute, that it pays its drivers a "driver freight rate" of 72% of the freight rate that IBT charges its customers, for the portions of the trip that the drivers perform.  *Id.* IBT also charges its customers "accessorial charges" for miscellaneous expenses such as hazmat fees, yard pulls, storage fees, bobtail fees, chassis hauls, and layover charges,.  *Id.* 3-6, ¶ 3(c)(i)-(vi). IBT contends, and Plaintiffs dispute, that IBT does not pay its drivers 72% of the accessorial charges

but instead pay drivers a rate that varies depending on nature of the service and whether the service was performed by the driver.  *Id*. 3, ¶ 3(c).

Due to rising gasoline prices, IBT also charges its customers a "customer fuel surcharge" fee, which, according to IBT, is typically a percentage of the customer freight rate that ranges from 0% to 25% but also is sometimes charged as a flat fee.  IBT maintains that it pays its drivers a payment referred to as a "driver fuel surcharge," which is generally calculated as a percentage of the driver freight rate and ranges from 9% to 32%.  IBT asserts that it pays its drivers a driver fuel surcharge to remain competitive in the industry, and the two figures for the driver fuel surcharge and customer fuel surcharge are not dependent on each other, and, as a result, there are times when the driver fuel surcharge is greater than the customer fuel surcharge.

Plaintiffs contend that, when they signed their LTAs, IBT verbally represented to both of them that they would be paid 72% of the freight rate and all other fees charged to IBT's customers, what Plaintiffs refer to as "72% gross," even if Plaintiffs did not personally perform all of the services that were provided to and charged IBT's customers.  Plaintiffs also maintain that they were shown an unspecified document that reflected this compensation arrangement.  In addition to compensation for 72% of the freight rate and other fees charged to IBT's customers, Plaintiffs contend that IBT verbally represented to them, when they signed their respective LTAs, that IBT would pay them 100% of the customer fuel surcharge.  In other words, Plaintiffs maintain that even if they only performed one leg of a delivery and only a portion of the services in connection with a job, they are still entitled to 72% of the entire freight rate and fees charged to customers and 100% of the customer fuel surcharge.  IBT argues that Plaintiffs' theory of compensation is illogical because, for example, if four drivers each performed a leg of a delivery, IBT would be required to

pay each driver 100% of the customer fuel surcharge (or a total of 400%) even though they only performed a portion of the delivery and services provided.

Both of the LTAs signed by Plaintiffs state that the agreements shall be for a term of "one calendar year . . . from the date hereof and thereafter continuously unless cancelled by either party." *Id.* 22 and 46, ¶ II. Martinez's agreement also includes an Appendix F, which states that the duration of the LTA has been amended from one year to three consecutive months. *Id.* 60. Appendix F further states that Martinez's LTA will expire on October 1, 2005. *Id.* Despite the duration language in the LTAs, both parties acknowledge that Plaintiffs' LTAs with IBT remained in force until they were terminated pursuant to the LTAs by Maradiaga in April 2012, and Martinez in February 2010. IBT further acknowledges that it does not require its drivers to sign LTAs every year but instead only requires drivers to sign an LTA at the beginning of their employment as independent contractors. Pls.' Mot. App. 91.

Regarding compensation, the LTAs state that Plaintiffs will be paid for each trip based on the rates set forth in Appendix D. *Id.* 10-11, 34-35. Appendix D states that Plaintiffs will be paid for services performed under the LTA on a "'load by load' basis" according to an attached schedule of rates and charges, which "is subject to amendment upon prior notice by Carrier and remains effective until the effective date of such amendment." *Id.* 10, 30, 57. In addition to charges set forth in the schedule of rates and charges, the LTAs specify that IBT, "at its option, may deduct from any payment otherwise due [Plaintiffs] hereunder all, or part of, any amount for which [Plaintiffs are] indebted to [IBT] either under this Agreement, any attachment hereto or any other bilateral agreements between the parties hereto." *Id*. 10. Although Plaintiffs initialed the pages on which Appendix D appears and acknowledged receipt of a current schedule of rates and charges, *Id*. 10,

neither party has been able to locate copies of the LTAs signed by Plaintiffs that contained the Schedule of Rates and Charges referenced in Appendix D. The LTAs also state with regard to Plaintiffs' compensation that "[s]aid rates [set forth in Appendix D] are *not* calculated as a percentage of [IBT's] gross revenue for the shipment. [Plaintiffs] shall receive settlement, for his services provided." Def.'s Mot. App. 67, § III (emphasis added).

Based on the deposition testimony of IBT manager Garland Davis ("Davis"), Plaintiffs contend that IBT has never given any of its drivers, including Plaintiffs, a schedule of rates and charges that explains how its drivers are to be compensated. Pls.' Mot. 8 (citing Pls.' App. 92-93). IBT, on the other hand, contends that, regardless of whether it provided Plaintiffs with a written schedule of rates and charges, all of its drivers knew what they were being paid before they accepted a load for delivery, and if they did not know, all they had to do was ask IBT. *Id.* According to Davis, if IBT's drivers were unhappy with the rate IBT was willing to pay for a particular load, they could simply decline to make the delivery. *Id.*

Plaintiffs contend that after Davis was hired by IBT in 2008, they began to notice that their compensation was decreasing and, for the first time, believed that they were not being compensated in accordance with their agreements with IBT. Plaintiffs further contend that in 2008 or 2009, after noticing that their compensation was decreasing, they requested documents from IBT to confirm they were being paid in accordance with their agreements with IBT but IBT refused to provide the requested documentation. Plaintiffs therefore brought this lawsuit to enforce the LTAs and IBT's verbal representations to recover monies they believe IBT should have but did not pay them. As previously noted, Plaintiffs also asserted truth-in-leasing violations based on their contention that

the LTAs fail to meet certain regulations that require carriers, such as IBT, to specify in leases with drivers the rates, charges, and manner of compensation.

On February 7, 2012, Plaintiffs moved for partial summary judgment on their truth-in-leasing and declaratory judgment claims.  IBT, in turn, moved on July 31, 2012, for partial summary judgment, seeking dismissal of Plaintiffs' contract, truth-in-leasing, and declaratory judgment claims.

## II.      Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party.  *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative

defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 586 (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III.    Analysis

IBT moved for partial summary judgment on the grounds that: (1) all of Martinez's claims are barred by statutes of limitations; (2) Plaintiffs' contract claims for 100% of the customer fuel surcharge and 72% of gross are barred by statutes of limitations; (3) Plaintiffs' contract claim for 72% of gross fails because IBT paid Plaintiffs in excess of 72% of the customer freight rate and the amounts IBT charged its customers for services performed by Plaintiffs; (3) Plaintiffs are not entitled to payment for services they did not perform; and (4) Plaintiffs' declaratory judgment claim is moot because Plaintiffs voluntarily terminated their leases.  Plaintiffs moved for partial summary judgment on their truth-in-leasing and declaratory judgment claims on the grounds that: (1) the LTAs violate the truth-in-leasing regulations because they do not specify the amount of compensation to be paid to Plaintiffs; (2) the LTAs do not include language required by section 376.12(g) and IBT failed to provide Plaintiffs with documentation verifying the amounts paid to Plaintiffs when requested; and (3) the LTAs fail to specify the items that can be deducted from Plaintiffs' pay.

### A.    Truth-in-Leasing Claim

Both parties moved for summary judgment on Plaintiffs' truth-in-leasing claims.  IBT argues in response to Plaintiffs' partial summary judgment motion that Plaintiffs' truth-in-leasing claim fails as a matter of law and they lack standing to assert such a claim.  More specifically, IBT contends that to prevail on their truth-in-leasing claim, Plaintiffs must prove that they incurred actual damages as a result of the alleged violations, and that violations in a vacuum without damages are insufficient to sustain a judgment.  IBT further asserts that to have standing to assert a claim based on truth-in-leasing violations, Plaintiffs must demonstrate that they suffered damages as a result of the alleged violations.  For support, IBT relies on *Owner-Operator Independent Drivers Association,*

*Incorporated v. Swift Transportation Company, Incorporated*, 632 F.3d 1111, 1122 (9th Cir.), *cert. denied*, 132 S. Ct. 112 (2011); *Owner-Operator Independent Drivers Association, Incorporated v. Landstar System, Incorporated*, 622 F.3d 1307, 1324-26 (11th Cir. 2010) (collecting cases), *cert. denied*, 132 S. Ct. 91 (2011); and *Rivas v. Rail Delivery Service, Inc*., 423 F.3d 1079, 1083 (9th Cir. 2005) ("Plaintiffs concede that the regulatory violations for which they sought injunctive relief caused them no injury. Because the Truth  in  Leasing violations caused them no injury, Plaintiffs did not have Article III standing to bring suit against Defendant motor carriers for those violations."). Plaintiffs counter that they have suffered damages as a result of IBT's violations because Plaintiffs have not been paid as originally represented and Plaintiffs have incurred attorney's fees in filing this action and compelling the production of documents.

Although this standing argument by IBT was asserted in response to Plaintiffs' partial summary judgment motion, the court construes IBT's contentions regarding Plaintiffs' truth-in-leasing claim as a request for dismissal pursuant to Rule 12(b)(1) for lack of standing.  In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "a court may evaluate: (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir.), *cert. denied*, 534 U.S. 1127 (2002); *see also Ynclan v. Dep't of Air Force*, 943 F.2d 1388, 1390 (5th Cir. 1991). Thus, unlike a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court is entitled to consider disputed facts as well as undisputed facts in the record.  *See Clark v. Tarrant Cnty*., 798 F.2d 736, 741 (5th Cir. 1986).  All factual allegations of the complaint, however, must be accepted as true.  *Den Norske Stats Oljeselskap As*, 241 F.3d at 424.

Jurisdictional questions are questions of law. *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 869 (5th Cir. 2000). The doctrine of standing "has its origins in both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise." *Ensley v. Cody Res., Inc.*, 171 F.3d 315, 319 (5th Cir. 1999) (internal quotations omitted). Standing "focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated" and deals with "the issue of whether the plaintiff is entitled to have the court decide the merits of the dispute or of particular issues." *Id*. at 869 (citation omitted).   As a general rule, standing must exist at the time an action is filed. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571 n. 4 (1992); *Pederson*, 213 F.3d at 870.

To establish standing, a plaintiff must satisfy constitutional *and* prudential requirements for standing. *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001). For constitutional standing, there must be: (1) injury in fact that is concrete and actual or imminent, not hypothetical; (2) a fairly traceable causal link between the injury and the defendant's actions; and (3) the likelihood of redressability. *See Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009). Prudential standing requirements address:

> [(1)] whether a plaintiff's grievance arguably falls within the zone of interests protected by the statutory provision invoked in the suit, [(2)] whether the complaint raises abstract questions or a generalized grievance more properly addressed by the legislative branch, and [(3)] whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties.

*St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 539 (5th Cir. 2009) (internal quotations and citations omitted).

Section 14704(a)(2) of Title 49, relied on by Plaintiffs, provides that a carrier "is liable for damages sustained by a person *as a result* of an act or omission of that carrier or broker in violation

[of the regulations]." 49 U.S.C. § 14704(a)(2) (emphasis added). Thus, to prevail on their truth-in-leasing claim, Plaintiffs must demonstrate not only that IBT violated section 376.12, but also that Plaintiffs were injured *as a result* of IBT's failure to comply with section 376.12.

Plaintiffs contend and allege in their Complaint that they sustained damages as a result of IBT's violations of certain truth-in-leasing regulatory requirements but nevertheless concede that the only damages they allegedly incurred resulted not from IBT's violation of section 376.12, but instead from IBT's failure to compensate Plaintiffs in accordance with the LTAs and alleged oral agreement. IBT's alleged failure to compensate Plaintiffs as agreed, however, is not a violation of section 376.12; nor can it be said that such injury is traceable or linked to IBT's alleged failure to meet section 376.12's requirements regarding the contents of carrier lease agreements or documentation that must be provided to drivers. Stated another way, the lack of specification in the LTAs as to Plaintiffs' compensation and IBT's alleged failure to provide requested documentation verifying the amounts paid to Plaintiffs did not cause them to incur damages or attorney's fees. Rather, according to Plaintiffs, they sustained damages as a result of IBT's failure to pay them as promised. Thus, the court determines that Plaintiffs cannot meet the requirement that there must be "a fairly traceable causal link between the injury and the defendant's actions" and they lack standing to pursue their truth-in-leasing claim. *See Little*, 575 F.3d at 540. Accordingly, the court determines that no genuine dispute of material fact exists regarding Plaintiffs' truth-in leasing claim, and IBT is entitled to judgment on Plaintiffs' truth-in-leasing claim. The court therefore **grants** Defendant's Motion for Partial Summary Judgment on this ground and **denies** Plaintiffs' Motion for Partial Summary Judgment as to their truth-in-leasing claim. Because the court determines that Plaintiffs' truth-in-

leasing claim fails for other reasons, it does not address IBT's argument that the claim is also barred by applicable statute of limitations.

**B.      Declaratory Judgment Claim**

Both parties moved for summary judgment on Plaintiffs' declaratory judgment claim.  IBT argues that Plaintiffs' declaratory judgment claim under 28 U.S.C. § 2201 is moot because there is no continuing relationship between the parties.  Although Plaintiffs contend that there is sufficient immediacy to warrant a declaratory judgment because Plaintiff Maradiaga is still employed by IBT, IBT maintains that neither of the Plaintiffs was ever employed by IBT, and even if they were, it is undisputed that Plaintiffs terminated their leases with IBT in February 2010 and April 2012. Because Plaintiffs' leases with IBT are no longer in effect, IBT contends that this matter lacks immediacy, and declaratory relief is no longer appropriate.

Pursuant to "[t]he Declaratory Judgment Act . . . federal courts [are authorized] to declare the rights and other legal relations of any interested party seeking such declaration." *Val-Com Acquisitions Trust v. Chase Home Fin., L.L.C.*, 434 F. App'x 395, 395 (5th Cir. 2011) (citations omitted). "[A] declaration may issue only to resolve an actual controversy between the parties. An actual controversy is a dispute that is definite and concrete, touching the legal relations of parties having adverse legal interests." *Id.* (citations omitted).  Also, "[t]he controversy must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop." *Id.* at 395-96 (citations omitted). Further, the "plaintiff[ ] ha[s] the burden of establishing the existence of an actual controversy under the Act." *Id*. at 396 (citations omitted).

Here, Plaintiffs have failed to demonstrate that the damages they allegedly incurred were sustained as a result of IBT's alleged truth-in-leasing regulation violations, and the court's determination that Plaintiffs lack standing to pursue their truth-in-leasing claim renders moot any declaration as to whether IBT's conduct violated section 376.12 of the truth-in-leasing regulations. Moreover, Plaintiffs' declaratory judgment claim is duplicative of their truth-in-leasing claim. Therefore, no claim for a declaratory judgment exists, and IBT is entitled to judgment on Plaintiffs' declaratory judgment claim. Accordingly, for these reasons, the court **grants** Defendant's Motion for Partial Summary Judgment and **denies** Plaintiffs' Motion for Partial Summary Judgment as to Plaintiffs' declaratory judgment claim.

### C.    Breach of Contract Claim

#### 1.    Statute of Limitations

IBT moved for summary judgment on the ground that Plaintiffs' contract claims are barred by applicable statute of limitations. IBT acknowledges that the LTAs are governed by California law but nevertheless briefed this issue using Texas's four-year statute of limitations for contracts based on its belief that the laws of the two states are the same. Plaintiffs also appear to assume, without explanation, that Texas's four-year statute of limitations for contracts applies. Because the court determines that California and Texas law differ in several respects, it applies California law as called for in the LTAs.

Under California law, the statute of limitations for oral and written contracts are not the same. Contracts based upon oral obligations that are not founded upon a written instrument have a two-year statute of limitations, whereas claims based on a written instrument have a four-year statute of limitations. *Sky Crest Inv., Inc. v. Security Title Ins. Co.*, 17 Cal. Rptr. 321, 322-33 (Cal.

Dist. Ct. App. 1961) (quoting Cal. Code of Civ. Proc. §§ 337, 339).  To qualify as an obligation

based on a written contract, the California Supreme Court has explained that "[t]he promise must

be one arising directly from the writing itself, and included in its terms."  *O'Brien v. King*, 164 P.

631, 633 (Cal. 1917);  *McCarthy v. Mount Tecarte L. & W. Co.*, 43 P. 956, 959 (Cal. 1896) ("In

order to be founded upon an instrument in writing, the instrument must itself contain a contract to

do the thing for the nonperformance of which the action is brought.").

        Plaintiffs contend that the discovery rule applies to determine if their claims are timely.  In

California, an action generally accrues on the date of injury unless modified by the discovery rule.

*Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1109 (Cal. 1988).  "Under the discovery rule, the statute of

limitations begins to run when the plaintiff suspects or should suspect that [his] injury was caused

by wrongdoing, that someone has done something wrong to [him].  *Id.* at 1110.  "A plaintiff need

not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated

by pretrial discovery."  *Id.* at 1111.  After the plaintiff has "notice or information of circumstances

to put a reasonable person on *inquiry*," the statute of limitations begins.  *Id.* at 1110-11 (quoting

*Gutierrez v. Mofid*, 39 Cal.3d 892, 896-97 (Cal. 1985) (emphasis added by *Gutierrez*).  Thus, "[s]o

long as a suspicion exists, it is clear that the plaintiff must go find the facts; [they] cannot wait for

the facts to find [them]."  *Jolly*, 44 Cal.3d at 1111.  A plaintiff who relies on the discovery rule has

the burden of alleging and proving "(1) the time and manner of discovery and (2) the circumstances

excusing delayed discovery."  *G. D. Searle & Co. v. Superior Court*, 49 Cal. App. 3d 22, 25 (Cal.

Dist. Ct. App. 1975), *abrogation on other grounds recognized by*, *California Sansome Co. v. U.S.

Gypsum*, 55 F.3d 1402, 1406 n.6 (9th Cir. 1995).  Plaintiffs therefore have the burden of pleading

and proving belated discovery of their contract claim.  *See id.*; *Czajkowski v. Haskell & White, LLP*,

144 Cal. Rptr. 3d 522, 528 (Cal. Dist. Ct. App. 2012). IBT, on the other hand, has the burden of proving its statute of limitations defense. *See id.*

The discovery rule generally does not apply to contract claims in California and has only been applied sparingly to such claims involving fraud when a defendant's breaches are committed in secret and the harm flowing from those breaches will not be reasonably discoverable by the plaintiff until a future time. *Rosen v. Stovall*, No. B205600, 2009 WL 4690212, at *4 (Cal. Dist. Ct. App. Dec. 10, 2009); *April Enters., Inc. v. KTTV*, 147 Cal. App. 3d 805, 830 (Cal. Dist. Ct. App. 1983) ("Despite the growing number of tort actions to which the discovery rule applies . . . our research reveals that the discovery rule has not yet been held applicable to breach of contract actions except in narrow cases involving fraud."). Courts that have applied the discovery rule to contract claims have done so only in limited circumstances when: "(1) the injury was difficult for the plaintiff to detect; (2) the defendant was in a far superior position to comprehend the act and the injury; and (3) the defendant had reason to believe the plaintiff remained ignorant he had been wronged." *Rosen*, 2009 WL 4690212, at *4-6 (discussing and distinguishing the two California cases in which the discovery rule has been applied to contract actions that did not involve fraud). Because the court determines that Plaintiffs' contract claims for 100% of the customer fuel surcharge and 72% gross should be treated differently for purposes of statute of limitations, the court addresses each claim separately.

### a.    Timeliness of Claim for 100 Percent of Customer Fuel Surcharge

IBT argues that it never agreed to pay Plaintiffs 100% of the customer fuel surcharge, but assuming arguendo that it did to pay Plaintiffs 100% of the customer fuel surcharge, IBT contends that Plaintiffs should have known of IBT's alleged breach when they received their first Driver

Settlement Worksheets.  According to IBT, Plaintiffs received a Driver Settlement Worksheet with each paycheck that showed that IBT calculated the fuel surcharge as 20% of Plaintiffs' earnings rather than 100% of the customer fuel charge.  IBT therefore contends that the statute of limitations with regard to Martinez's contract fuel surcharge claim *commenced on October 7, 2005*, the date he received his first Driver Settlement Worksheet.  Similarly, IBT asserts that the statute of limitations with regard to Maradiago's contract claim *commenced on August 4, 2006*, the date he received his first Driver Settlement Worksheet.  IBT therefore contends that *Martinez was required to file suit no later than October 7, 2009, and Maradiaga was required to file suit by August 4, 2010*, four years after they both received their first Driver Settlement Worksheets.

IBT further contends that, because Plaintiffs' contract claim to recover 100% of the customer fuel surcharge is a "new" claim that was not included in an amended pleading until June 28, 2012, Plaintiffs' claim in this regard is barred by Texas's four-year statute of limitations for contracts. Even assuming that IBT had sufficient notice of such claim as a result of Plaintiffs' September 7, 2011 depositions, and Plaintiffs' January 11 and 12, 2012 responses to IBT's interrogatories, IBT nevertheless maintains that Plaintiffs' fuel surcharge claim is barred by the applicable statute of limitations because Plaintiffs failed to timely amend their pleadings to include the contract claim for 100% of the customer fuel surcharge.

Plaintiffs counter that the weekly settlement statements showed only how much IBT paid Plaintiffs, not the amount IBT was charging its customers for the fuel surcharge.  As a result, Plaintiffs contend that they did not know what percentage of the customer fuel surcharge they were being paid.  Plaintiffs further assert that IBT repeatedly told them that they were being paid the entire

fuel surcharge and refused in 2008 or 2009 to provide them with requested documentation to confirm the amounts being paid by IBT.  As a result, Plaintiffs contend that they could not have known or discovered that they were being paid less than 100% of the fuel surcharge prior to "2008/2009 when they noticed their pay was decreasing" after Davis was hired by IBT.  Pls.' Resp. 13.  Plaintiffs therefore dispute whether their contract claim based on IBT's alleged underpayment of the fuel surcharge is a new claim as urged by IBT.

IBT replies that Plaintiffs cannot rely on the discovery rule because they failed to plead it or any facts to support it.  IBT also argues that even if Plaintiffs have not waived their right to rely on the discovery rule, the defense is not applicable to contract claims in Texas because breach of contract claims are not inherently undiscoverable.  Additionally, IBT contends that Plaintiffs failed to exercise due diligence in requesting information about their compensation as required to assert the defense because they waited three to four years after receiving their first settlement worksheets before inquiring the first time in 2008 or 2009.

An amendment to a pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out   or attempted to be set out   in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).  This is because "'once litigation involving a particular transaction has been instituted, the parties should not be protected [by the statute of limitations] from later asserted claims that arose out of the same conduct set forth in the original pleadings.'" *Flores v. Cameron Cnty., Tex.*, 92 F.3d 258, 272 (5th Cir. 1996) (quoting *Kansa Reinsurance Co. v. Congressional Mortg. Corp.*, 20 F.3d 1362, 1366-67 (5th Cir. 1994)).  Thus, "once litigation involving particular conduct or a given transaction or

occurrence has been instituted, the parties are not entitled to the protection of the statute of limitations against the later assertion by amendment of defenses or claims that arise out of the same conduct, transaction, or occurrence as set forth in the original pleading." *FDIC v. Conner*, 20 F.3d 1376, 1380 (5th Cir.1994) (quoting 6A Charles A. Wright *et al.*, Federal Practice and Procedure § 1496 (3d ed. 1990)). The "critical" issue is "whether the opposing party was put on notice regarding the claim raised therein." *Holmes v. Greyhound Lines, Inc.*, 757 F.2d 1563, 1566 (5th Cir. 1985) (citing *Woods Exploration & Producing Co. v. Aluminum Co. of Am.*, 438 F.2d 1286, 1299 (5th Cir. 1971), *cert. denied*, 404 U.S. 1047 (1972)).

After reviewing Plaintiffs' pleadings, the court determines that their amended contract claim as to the fuel surcharge does not alter materially Plaintiffs' original contract claim because the essence of Plaintiffs' contract claim is that IBT failed to compensate them as originally agreed. Thus, Plaintiffs' contract claim is the same with the exception that Plaintiffs amplified and added further facts in support of their existing contract claim.  In other words, the court concludes that Plaintiffs' claim to recover 100% of the customer fuel surcharge arises out of the same conduct, transaction, or occurrence set forth or attempted to be set forth in Plaintiffs' original pleading and therefore relates back to May 21, 2010, the date of Plaintiffs' Original Complaint.

Further, even assuming as IBT contends that Plaintiffs should have been put on notice of their fuel surcharge claim as of the date they received their first Driver Settlement Worksheets (Martinez on October 7, 2005, and Maradiaga on August 4, 2006), the court concludes that Plaintiffs' fuel surcharge contract claim would not necessarily barred.  Because Plaintiffs were paid by the load on a periodic basis and each payment was separable from the others and not a part of a total payment,

any agreement the parties' had should logically be considered an installment contract for purposes of determining whether the claim is barred by the applicable statute of limitations.  *See Conway v. Bughouse, Inc.*, 164 Cal. Rptr. 585, 588-89 (Cal. Dist. Ct. App. 1980), *superseded by statute on other grounds as recognized in Redlands Comty. Hosp. v. Superior Court*, No. E048530, 2009 WL 3163537 (Cal. Dist. Ct. App. Oct. 02, 2009).  Because "the right to receive periodic payments under a [contract] is a continuing one . . . any time limitation upon the right to sue for each installment necessarily commences to run from the time when that installment actually falls due." *Conway*, 164 Cal. Rptr. at 588-89 (quoting *Dillon v. Board of Pension Comm'rs*, 116 P.2d 37, 39 (1941)).

Each alleged underpayment by IBT to Plaintiffs is therefore considered separately for purposes of statute of limitations; however, because Plaintiffs acknowledge that their alleged entitlement to recover 100% of the customer fuel surcharge is based entirely on an alleged oral agreement, the statute of limitations for such claim is two years.  As a result, the court concludes that Plaintiffs can only reach back two years to **May 21, 2008**, from the time this action was filed.  Since Plaintiffs argue that they did not discover their injury until after Davis was hired and their pay began to decrease, and the record demonstrates that Davis's employment with IBT did not commence until April 9, 2008 [Def.'s Resp. App. 1], application of the discovery rule to Plaintiffs' fuel surcharge claim and IBT's contention that Plaintiffs failed to plead the discovery rule appear to be moot absent additional evidence by the parties to the contrary.  Accordingly, the court determines that a genuine dispute of material fact exists as to whether Plaintiffs' contract claim for 100% of the customer fuel surcharge is barred by the statute of limitations, and **denies** IBT's summary judgment motion on this ground.

### b.   Timeliness of Claim for 72 Percent of Gross

IBT contends, based on the Driver Settlement Worksheets provided to Plaintiffs each paycheck, that Plaintiffs' contract claim for 72% of gross charges is also barred by the statute of limitations because Plaintiffs should have known they were not being paid a percentage of all charges to IBT customers.  Plaintiffs again argue in response that the earliest they could have known that they were being underpaid is when they noticed in 2008 that their pay was decreasing.

For purposes of determining whether Plaintiffs' 72% of gross contract claim is barred by limitations, the court applies the four-year statute of limitations applicable to written contracts because, although Plaintiffs contend that IBT verbally agreed to pay 72% of all amounts paid by IBT customers regardless of whether other contractors performed the services or assisted in Plaintiffs' performance of services, the LTAs expressly state with regard to Plaintiffs' compensation that "[s]aid rates [set forth in Appendix D] *are not calculated as a percentage of [IBT's] gross revenue for the shipment. [Plaintiffs] shall receive settlement, for his services provided*."  Def.'s Mot. App. 67, § III (emphasis added).  Thus, regardless of the rates or percentage of rates ultimately agreed to, the parties' written contract governs Plaintiffs' contract claim for 72% of gross charges.

As previously noted, the court has determined that the parties' written agreement qualifies as an installment contract, and as a result, each alleged underpayment by IBT is considered separately for purposes of the statute of limitations.  As a result, IBT's contention that Plaintiffs' claim commenced on the first date they received a Driver Settlement Worksheet is incorrect.  Rather, Plaintiffs' claims accrued separately for each instance that Plaintiffs were underpaid.  The court therefore determines that Plaintiffs are therefore entitled to reach back four years to **May 21, 2006**,

from the date they filed this action.[1]   As a result, Plaintiffs' contention that they did not discover they were injured until 2008 is irrelevant.   Accordingly, the court determines that a genuine dispute of material fact exists as to whether Plaintiffs' contract claim for 72% of gross charges is barred by the statute of limitations, and **denies** IBT's summary judgment motion on this ground.

> ### 2.   IBT's Argument that it is Entitled to Judgment on Plaintiffs' 72 Percent of Gross Claim on Other Grounds

IBT also moved for summary judgment on Plaintiffs' 72% of gross claim on the ground it paid Plaintiffs' more than 72% of the amount IBT billed to customers for drayage and freight, hazmat fees, yard pulls, bobtails, chassis hauls, chassis flips, chassis splits, stop-offs, driver detention fees, and dry runs.   For support, IBT relies on the affidavit testimony of Davis and Kevin Mortimer ("Mortimer") and other documents attached to Davis's affidavit.   IBT also argues that Plaintiffs are not entitled, under the LTAs, to the gross amount billed to IBT's customers and points to evidence that Plaintiffs have admitted they are only entitled to compensation for services they actually performed as opposed to services other contractors may have performed in connection with a particular job assigned to Plaintiffs.

Plaintiffs counter in response that IBT's argument that it paid Plaintiffs in excess of 72% is flawed because IBT verbally agreed, when Plaintiffs signed the LTAs, that they would be compensated for 72% of gross, not 72% of the portion of the services performed by Plaintiffs. Plaintiffs contend that IBT also showed them an unspecified document that reflected the same agreement.   Plaintiffs contend, based on two district court cases out of Oregon and New Jersey, that

---

[1] The court notes that it does not have before it information regarding the dates each alleged underpayment by IBT occurred and thus can only make a general determination as to when the statute of limitations accrued as to this and Plaintiffs' other contract claim.

courts require strict compliance with truth-in-leasing regulatory requirements that apply to how the calculation of payments must be specified in a written agreement. Pls.' Resp. 14 (citing *Port Drivers Fed'n 18, Inc. v. All Saints Express, Inc.*, 757 F. Supp. 2d 443, 451 (D. N.J. 2010) and *Cunningham v. Lund Trucking Co.*, 662 F. Supp. 2d 1262, 1268 (D. Or. 2009). Plaintiffs also rely on an Illinois district court case involving a truth-in-leasing claim for the proposition that "gross revenue" should be interpreted to mean the total amount charged to customers if the lease does not define the term and contains conflicting language regarding compensation. *Id.* (citing *Owner-Operator Indep. Drivers Ass'n, Inc. v. Bulkmatic Transport Co.*, 503 F. Supp. 2d 961, 970-72 (N.D. Ill. 2007). Plaintiffs further contend that, even assuming IBT only agreed to pay Plaintiffs 72% of charges for work they performed, there are numerous instances where Plaintiffs were paid less than 72% of charges directly attributed to work they performed.

Unlike Texas, the test in California regarding the "admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." *Pacific Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.*, 442 P.2d 641, 644 (Cal. 1968). Extrinsic evidence, nevertheless, is "not admissible to add to, detract from, or vary the terms of a written contract." *Id.* at 645. Thus, when a claimed oral agreement directly contradicts a written instrument, parol testimony that is contrary to the contract's express terms cannot be considered. *Banco Do Brasil, S. A. v. Latian, Inc.*, 285 Cal. Rptr. 870, 891 & n.49 (Cal. Dist. Ct. App. 1991), *cert. denied*, 504 U.S. 986 (1992). On the other hand, "[i]f the court decides, after considering [the] evidence, that the language of a contract, in the

light of all the circumstances, is fairly susceptible of either one of the two interpretations contended

for, extrinsic evidence relevant to prove either of such meanings is admissible." *Gerdlund v.*

*Electronic Dispensers Int'l*, 235 Cal. Rptr. 279, 284-85 (Cal. Dist. Ct. App. 1987) (quoting *Pacific*

*Gas & Elec. Co.*, 442 P.2d at 645-46) (internal quotations and citations omitted).

Unlike the lease at issue in *Bulkmatic Transport Company,* the LTAs do not state that

Plaintiffs are entitled to a percentage of gross charged to or paid by IBT customers.  Instead, the

LTAs unequivocally state that Plaintiffs' compensation is " *not* calculated as a percentage of [IBT's]

gross revenue." Def.'s Mot. App. 67, § III (emphasis added).   The LTAs also make clear that

Plaintiffs compensation is limited to services they provided.  *Id.*  The court therefore concludes that

regardless of whether Appendix D containing the rates was provided to Plaintiffs and regardless of

the percentage ultimately agreed to, the LTAs' language as to whether Plaintiffs are entitled to

compensation for the gross amount paid by IBT customers, including amounts for services

performed by contractors other than Plaintiffs, is susceptible to only one meaning and makes clear

that Plaintiffs are not entitled to recover a percentage of the gross amount.

Moreover, the court cannot consider evidence of the alleged oral agreement and other

extrinsic evidence relied on by Plaintiffs to show that an agreement on this issue other than that in

the LTA was reached because such evidence would directly contradict the terms of the LTA.  *See*

*Pacific Gas & Elec. Co.*, 442 P.2d at 644; *Banco Do Brasil, S. A.*, 285 Cal. Rptr. at 891 & n.49.

Even if such evidence were admissible, the result would still be the same because, under California

law, "[t]he execution of a contract in writing, whether the law requires it to be written or not,

supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied

the execution of the instrument." Cal. Civ. Code § 1625.  Accordingly, the LTA language precluding compensation based on gross revenue is determinative and the only issue that remains is whether Plaintiffs were paid 72% of the total amount for services they performed.

As previously noted, IBT submitted affidavits of Davis and Mortimer to show that IBT paid Plaintiffs more than 72% for services performed.  Plaintiffs objected and moved to strike portions of Davis's and Mortimer's affidavit testimony on the grounds that the testimony contains unsubstantiated conclusory statements.  Specifically, Plaintiffs object to the last sentence of paragraphs 12, 16, 17, 18, 19, 20, 21, and 22 of Davis's affidavit wherein he concludes: "During the relevant time period, IBT paid Plaintiffs . . . in excess of 72%." Def.'s Mot. App. 42-50.  Plaintiffs also object to all of paragraph 25 of Davis's affidavit where he states: "I have conducted a preliminary analysis of Plaintiffs' damages claim.  It appears that: . . .  Plaintiffs were paid as least 72% of the Customer Freight Rate . . . and . . . Plaintiffs were properly paid for all accessorial services they rendered." *Id.* 8, ¶ 25.  With regard to Mortimer, Plaintiffs object to paragraph 5 of his affidavit where he states:

> With respect to Plaintiffs, Rafael Martinez and Nicolas Maradiaga, such information and data concerning charges to IBT's customers and payments to Plaintiffs during the relevant time period shows that IBT paid each Plaintiff in excess of 72% of the total amount that IBT charged its customers for the following services performed by each Plaintiff: (1) drayage, (2) hazmat fees, (3) yard pulls, (4) bobtails, (5) chassis hauls, (6) chassis flips, (7) chassis splits, (8) stop-offs, (9) driver detention fees, and (10) dry runs."

*Id.* 251, ¶ 5.  In addition, Plaintiffs object to the footnote in Mortimer's affidavit where he concludes that "the end result is that Plaintiffs were paid in excess of the amounts sought in this action." *Id.* n.1.

Plaintiffs contend, based on *Coker v. Dallas County Jail*, No. 3:05CV0005-M, 2007 WL 3022575, at \*6 (N.D. Tex. Oct. 17, 2007), that "[a]ffidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment, and should be stricken from the record."  Pls.' Resp. 6.

IBT counters that it presented competent evidence to supports its argument that IBT paid more than the amounts Plaintiffs claim for services they performed.  IBT contends that Davis's and Mortimer's affidavits are based on their personal knowledge of records obtained by reviewing 70,000 pages of documents concerning IBT's payments to its drivers and charges to its customers or from "the regular business dealings and regular business records of [IBT's] Arlington office, which are kept under [Davis's] control."  Def.'s Reply 6.  IBT notes that Mortimer further stated in his affidavit that:

> (a) "IBT contemporaneously inputs information and data into its computer system concerning charges to IBT's customers and payments to drivers," (b) ". . . information and data [are] voluminous," (c) he "personally reviewed and summarized IBT's information and data," and (d) "such information and data concerning charges to IBT's customers and payments to Plaintiffs during the relevant time period shows that IBT paid each Plaintiff in excess of 72% of the total amount that IBT charged its customers for … services performed by each Plaintiff.

*Id.* 6-7 (quoting portions of Mortimer's Affidavit, Def.'s Mot. App. 250-51).

IBT therefore argues that Davis's and Mortimer's testimony is admissible under Federal Rule of Evidence 1006 "to prove the content of voluminous writings . . . that cannot be conveniently examined in court," and the Fifth Circuit permits the use of summary witnesses where the evidence is voluminous or "present[s] an appreciable degree of complexity." *Id.* 7 (quoting *United States v. Ollison*, 555 F.3d 152, 162 (5th Cir. 2009), and *United States v. Harms*, 442 F.3d 367, 376 (5th Cir.

2006). IBT maintains that, absent such testimony, it would have had to submit approximately 70,000 pages of documents, "thereby leaving this Court to analyze each and every entry on each and every page to determine the amount that Plaintiffs had been paid, as well as the amount that IBT charged its customers." IBT Reply 7.

Affidavits offered to support or oppose summary judgment "must 'set forth such facts as *would* be admissible in evidence.'" *Love v. National Med. Enters*., 230 F.3d 765, 776 (5th Cir. 2000) (quoting Fed. R. Civ. P. 56(e) (emphasis provided by *Love*). Thus, "[a]lthough the summary judgment evidence need not be in 'a form that would be admissible at trial,' . . . the party opposing [or moving for] summary judgment must be able to prove the underlying facts." *Id. (*quoting *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990) (quoting *Celotex Corp.,*, 477 U.S. at 324. Under Rule 1006, "'[t]he contents of voluminous writings . . . which cannot conveniently be examined in court may be presented in the form of a . . . summary', provided that the documents on which it is based are 'made available for examination or copying, or both.'" *Love*, 230 F.3d at 776 (quoting Rule 1006).

While Rule 1006 generally applies to the submission of evidence at trial as reflected in the cases cited by IBT, it has been applied in the summary judgment context. *See, e.g., Wooten v. Federal Express Corp.*, No. 3:04CV1196-D, 2007 WL 63609, at *25 (N.D. Tex. Jan. 9, 2007), *aff'd*, 325 F. App'x 297 (5th Cir. 2009); *Martinez v. Prestige Ford Garland Ltd. P'ship*, No. 3:03-CV-251-L, 2004 WL 1194460, at *4, n.7 (N.D. Tex. May 28, 2004), *aff'd* ,117 F. App'x 384 (5th Cir. 2005). It is unclear, however, from Davis's and Mortimer's affidavits whether IBT has made available to Plaintiffs for inspection and copying all the documents that underly the summaries.

**Memorandum Opinion and Order – Page 27**

Moreover, while Mortimer states that the records reviewed and summarized consist of approximately 70,000 pages and are voluminous, the court is not convinced that the records at issue are in fact voluminous because Mortimer's conclusion in this regard is based on his review of *all* records of "charges to IBT's customers and payments to drivers," not those limited to Plaintiffs' compensation. Def.'s' Mot. App. 251.  Additionally, it is unclear what time period Davis and Mortimer refer to when they say "information and data concerning charges to IBT's customers and payments to Plaintiffs *during the relevant time period*." *See id.*  The court also concludes that Davis's conclusory and speculative statement, that "*it appears*" Plaintiffs were paid more than 72%, is not competent summary judgment evidence. *Id.* 49, ¶ 25.  More importantly, the court was unable to confirm, based on the documents attached to Davis's affidavit, whether IBT paid Plaintiffs' more than 72% for services performed as IBT asserts, because neither Davis's nor Mortimer's affidavits provide any explanation as to how they reached their conclusion in this regard or how the documents support the conclusion.

This evidence, as submitted by IBT, is not competent summary judgment evidence.  The court therefore declines to consider the summaries and testimony objected to by Plaintiffs in addressing IBT's motion and **sustains** Plaintiffs' objection in this regard.[2]  Accordingly, while the court agrees with IBT that Plaintiffs are only entitled to 72% of the amounts charged for services Plaintiffs performed, the court cannot conclude based on the record before it that IBT is entitled to judgment on the ground that it paid Plaintiffs in excess of 72% for work they performed.  The court

---

[2] The court notes that Plaintiffs' evidence is likewise deficient.  While Plaintiffs summarize and assert in their response there have been numerous instances in which IBT has paid Plaintiffs less than 72%, the handful of documents they rely on do not establish that the full amount of the total charges per invoice were for services performed *only* by Plaintiffs.

thus determines that a genuine dispute of material fact exists as to whether Plaintiffs were paid in excess of 72% for work they performed, and **denies** IBT's summary judgment motion on this ground but **grants** IBT's motion to the extent it contends that Plaintiffs 72% gross contract claim should be limited to 72% of the amounts IBT charged its customers for freight and other services that were *actually performed by Plaintiffs*, not all fees for services charged to customers.

### D.      Plaintiffs' Motion to Strike Evidence of Bankruptcy Proceedings

Plaintiffs also objected to and moved to strike as irrelevant evidence submitted by IBT regarding the bankruptcy proceedings initiated by Plaintiffs (Doc. 121).  The court concludes that evidence of Plaintiffs' bankruptcies is irrelevant to this action; however, the court did not consider this evidence and therefore **denies as moot** Plaintiffs' objection and motion to strike.

### E.      IBT's Request for Additional Time to Conduct Discovery

In response to Plaintiffs' summary judgment motion, IBT requested additional time to conduct discovery.  The court believes that this request was previously addressed and resolved by the court's orders permitting IBT to redepose Plaintiffs and allowing the parties to supplement their briefing based on this discovery.  The request is therefore **denied as moot.**

### F.      Settlement

The only claims that remain are Plaintiffs' contract claims for (1) 100% of the customer fuel surcharge for compensation that was due and owing to Plaintiffs from May 21, 2008, to present; and (2) 72% of the amounts IBT charged its customers for services actually performed by Plaintiffs for compensation that was due and owing to Plaintiffs from May 21, 2006, to present.  Now that the court has significantly narrowed the scope of the case, the court believes that the parties should

seriously consider settling this action.  Further, given the cost, both in term of attorney's fees and judicial resources, the court questions whether it makes good business, economic, or legal sense for the parties to continue litigating this matter in light of the damages that may be recovered. Accordingly, the parties and their counsel are **directed** to appear before United States Magistrate Judge Paul D. Stickney for mediation.  The mediation will take place in accordance with Judge Stickney's schedule but in no event later than **December 3, 2012**.  Both Plaintiffs shall attend the mediation in person, and a representative of IBT with full settlement authority must attend the mediation in person.

## IV.    Conclusion

For the reasons explained, the court concludes that genuine disputes of material fact exist regarding IBT's statute of limitations defense and whether Plaintiffs were paid in excess of 72% for work performed by them; however, no genuine dispute of material fact exists regarding Plaintiffs' truth-in-leasing and declaratory judgment claims.  Accordingly, the court **denies** Plaintiffs' Motion for Partial Summary Judgment on their declaratory judgment and truth-in-leasing claims; **denies** Defendant's Motion for Partial Summary Judgment with respect to its statute of limitations defense and its argument that IBT paid Plaintiffs 72% for work performed by Plaintiffs in accordance with their written leases; **grants** Defendant's Motion for Partial Summary Judgment to the extent it contends that Plaintiffs 72% gross contract claim should be limited to 72% of the amounts IBT charged its customers for freight and other services that were *actually performed by Plaintiffs*, not all fees for services charged to customers; and **grants** Defendant's Motion for Partial Summary Judgment with respect to Plaintiffs' declaratory judgment and truth-in-leasing claims, and they are

**dismissed with prejudice**.  Thus, as previously noted, the only claims that remain are Plaintiffs'

contract claims for (1) 100% of the customer fuel surcharge for compensation that was due and

owing to Plaintiffs from May 21, 2008, to present; and (1) 72% of the amounts IBT charged its

customers for services actually performed by Plaintiffs for compensation that was due and owing to

Plaintiffs from May 21, 2006, to present.  The clerk of the court is **directed** to provide Magistrate

Judge Stickney with a copy of this memorandum opinion and order.

      **It is so ordered** this 28th day of September, 2012.

_____
Sam A. Lindsay
United States District Judge