IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NICOLAS MARADIAGA and RAFAEL MARTINEZ, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | No. 3:10-cv-1028-L (BF) |
| INTERMODAL BRIDGE TRANSPORT, INC., | § § § § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiffs Nicolas Maradiaga and Rafael Martinez have filed a Motion for Attorneys' Fees and Costs seeking $133,041.38 from Defendant Intermodal Bridge Transport, Inc. ("IBT"). For the following reasons, the Court recommends that Plaintiffs' motion be denied.

**Background**

IBT is a trucking company that employs independent contractors, like Plaintiffs, as owner-operator truck drivers to transport shipping containers and other freight between rail yards and various destinations.[1] Plaintiffs performed hauling services for IBT's customers for several years pursuant to written Lease and Transportation Agreements (the "Leases") with IBT. Martinez began working for IBT in September 2005, and Maradiaga began working for IBT in July 2006. Sometime in or around 2009, Plaintiffs suspected that they were not being properly compensated. Plaintiffs filed this lawsuit in May of 2010 to recover compensation allegedly owed to them under the Leases.

---

[1] Because the District Court's prior opinions thoroughly set forth the background facts and procedural history of this case, *see, e.g., Maradiaga v. Intermodal Bridge Transp., Inc.*, 899 F.Supp.2d 551 (N.D. Tex. 2012), the Court will summarize only the facts, procedural history, and law necessary to explain this decision.

Plaintiffs' most recent amended complaint asserted claims against IBT for breach of contract, violations of federal truth-in-leasing regulations, and a declaratory judgment that IBT failed to comply with such regulations. *See* Plf. 3d Am. Compl. (Doc. 103) at 5-8. With respect to their breach of contract claim, Plaintiffs alleged that, when they signed their Leases, IBT verbally represented that it would pay them 72% of the entire freight rate and all other fees charged to IBT's customers (the "72% gross rate"), even if Plaintiffs did not personally perform all of the services that were charged IBT's customers, plus 100% of any fuel surcharge paid by the customer. *See id.* at 5, ¶ 20. According to Plaintiffs, IBT breached their agreement to pay them the 72% gross rate plus the entire fuel surcharge paid by the customer. *See id.* IBT denied that it ever promised to compensate Plaintiffs as alleged and instead agreed to pay only 72% of the basic freight rate charged to its customers plus select miscellaneous fees for services that Plaintiffs actually performed and a driver fuel surcharge that was not necessarily dependent on the amount of the customer fuel surcharge.

After conducting discovery, both parties moved for partial summary judgment. The District Court held that Plaintiffs could not establish a causal link between their injury and IBT's alleged violations of the federal truth-in-leasing regulations required for standing to pursue a truth-in-leasing claim and that Plaintiffs' lack of standing to pursue a truth-in-leasing claim rendered moot their claim for declaratory relief. *Maradiaga v. Intermodal Bridge Transp., Inc.*, 899 F.Supp.2d 551, 562-63 (N.D. Tex. 2012). With respect to their breach of contract claims, the District Court held that different statutes of limitation barred some of Plaintiffs' claims. *Id.* at 566-67. The District Court further held that, under the Leases, Plaintiffs were not entitled to compensation at the 72% gross rate but that their compensation claims should be limited to 72% of the amounts IBT charged its customers for freight and other services that were actually performed by Plaintiffs. *Id.* at 571. Thus,

2

the only claims that survived summary judgment were Plaintiffs' breach of contract claims for (1) 100% of the customer fuel surcharge for compensation that was due and owing to Plaintiffs from and after May 21, 2008; and (2) 72% of the amounts IBT charged its customers for services actually performed by Plaintiffs for compensation that was due and owing to Plaintiffs from and after May 21, 2006. *Id.*

Having significantly narrowed the scope of Plaintiffs' contract claims, the District Court ordered the parties to mediation with the United States Magistrate Judge. *Id.* The District Court expressly questioned whether it made sense for the parties to continue litigating the case in light of the relatively small amount of damages that might be recovered in comparison to the attorney's fees likely to be expended. *Id.* at 574. The District Court repeated its concerns in its order denying Plaintiffs' motion for reconsideration of the summary judgment ruling. *See* Mem. Op. and Order dated 11/6/12 at 5. Ultimately, as a result of the court-ordered mediation, the parties agreed that IBT would pay $30,000 to settle any and all claims asserted in the lawsuit, as follows: (1) $12,872 to Plaintiffs' counsel Blanscet Hooper & Hale, LLP for reimbursement of costs incurred; (2) $11,304 to Maradiaga's bankruptcy estate; and (3) $5,652 to Martinez. *See* Def. App. at 5, ¶ 8 & 39; *see also id.* at 24. The parties did not reach an agreement on Plaintiffs' attorneys' fees and agreed to submit the issue to the Court. *See id.* at 25-26, ¶ 3 & 39.

Accordingly, Plaintiffs filed the instant motion seeking $133,041.38 in attorneys' fees and costs. *See* Plf. Br. at 5. Plaintiffs argue that they are the "prevailing parties" under the Leases and, as such, are entitled to an award of fees pursuant to California Civil Code § 1717(a). IBT disputes that Plaintiffs are prevailing parties entitled to recover any fees at all and that, even if Plaintiffs could be considered prevailing parties, the fees sought are unreasonable and should be limited to no more

than $24,757.95. *See* Def. Resp. at 25. The issues have been fully briefed by the parties, and the motion is ripe for determination.

## Legal Standards

The Leases provide that "[i]n the event [IBT] shall be required to institute or defend any action at law, or in equity, against, or by, [Plaintiffs] and arising out of this Agreement, [Plaintiffs] agree[ ] to pay ... reasonable attorneys' fees for [IBT] in commencing or defending any action or suit." *See* Plf. Br. at 14-15; *see also* Plf.MSJ App. (Doc. 70) at 23, § XIV & 47, § XIV. The parties agree that California law controls Plaintiffs' fee application pursuant to the Leases' choice-of-law provisions. Plf. Br. at 13; Def. Resp. at 5. *See also CK DFW Partners Ltd. v. City Kitchens, Inc.*, 541 F.Supp.2d 839, 840 (N.D. Tex. 2008) ("State law applies in determining whether attorney's fees should be awarded in state-law cases."). The Court therefore applies California law in determining whether Plaintiffs are entitled to attorneys' fees.

Section 1717 of the California Civil Code governs the recovery of attorneys' fees in connection with contract-related disputes and provides, in relevant part:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the prevailing party on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to costs.

Cal. Civ. Code § 1717(a). The effect of section 1717 is to create a reciprocal right to attorneys' fees and provide the "prevailing party on the contract" with a right to recover such fees. *Hsu v. Abbara*, 891 P.2d 804, 805 (1995) ("When a contract contains a provision granting either party the right to recover attorney fees in the event of litigation on the contract, Civil Code section 1717 ... gives the

4

'party prevailing on the contract' a right to recover attorney fees, whether or not that party is the party specified in the contract.").

Under section 1717, the "prevailing party on the contract" is "the party who recovered a greater relief in the action on the contract." Cal. Civ. Code § 1717(b)(1).[2] It is within the court's discretion to determine which party is the prevailing party on the contract, or that "there is no party prevailing on the contract." *Id.* As the California Supreme Court has explained:

> When a party obtains a simple, unqualified victory by completely prevailing on or defeating all contract claims in the action and the contract contains a provision for attorney fees, section 1717 entitles the successful party to recover reasonable attorney fees incurred in prosecution or defense of those claims. If neither party achieves a complete victory on all the contract claims, it is within the discretion of the trial court to determine which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees. In deciding whether there is a "party prevailing on the contract," the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources.

*Scott Co. of Ca. v. Blount, Inc.*, 979 P.2d 974, 977 (1999) (internal citations and quotations omitted).

### Analysis

The threshold question in this dispute is whether Plaintiffs are "prevailing parties" on the Leases. To answer this question, the Court performs a comparative analysis of the parties' litigation success in which the Court first considers each parties' litigation objectives, as those objectives are

---

[2] Although Section 1717(b)(2) provides that "[w]here an action has been voluntarily dismissed or dismissed pursuant to a settlement of the case, there shall be no prevailing party for purposes of this section," Plaintiffs and IBT agreed that IBT would not raise section 1717(b) as a defense to any motion by Plaintiff for attorneys' fees. Def. App. at 39. *See Kim v. Euromotors West/The Auto Gallery*, 56 Cal.Rptr.3d 780, 785 (Ct. App. 2007) (recognizing that parties may waive application of section 1717(b)(2) and submit the question of attorney fees to the trial court for resolution); *Jackson v. Homeowners Ass'n Monte Vista Estates-East*, 113 Cal.Rptr.2d 363, 364 (Ct. App. 2001) ("[A] settlement agreement which provides that the trial court will determine the prevailing party in the action, and the amount of the attorney fee award, if any, is valid and enforceable.").

5

stated in the parties' pleadings and other submissions to the trial court, and then examines the extent to which the parties achieved those objectives, and balances the level of success that each side achieved. *Hsu*, 891 P.2d at 813. If Plaintiffs clearly achieved "greater relief" than IBT, then Plaintiffs are the "prevailing party."

The essence of Plaintiffs' contract claim is that IBT failed to compensate them as agreed. *Maradiaga*, 899 F.Supp.2d at 557. Their objective in bringing this litigation was to recover monetary damages for unpaid compensation. Plaintiffs' assertion that a "critical component" of their case was to obtain documents in IBT's possession to verify and calculate their damages rings hollow. Plaintiffs' acquisition of such documents was merely a means to achieving their desired result of recovering unpaid compensation, not an end in itself. The only breach of the Leases alleged in Plaintiffs' Third Amended Complaint is that IBT failed to pay them as agreed. There is no allegation that IBT breached the Leases by failing to provide them with documents. Indeed, there is no allegation that any provision of the Leases obligated IBT to provide them with documents. To the extent Plaintiffs argued that the Leases did not contain all the terms of their compensation in violation of truth-in-leasing regulations, those claims are not contract claims which would support an award of fees under section 1717. Nor did Plaintiffs prevail on those claims. Finally, IBT's alleged refusal to provide documents or unwillingness to mediate are equitable considerations unrelated to any party's litigation success and are not proper factors for the Court to consider in its analysis under section 1717. *Deane Gardenhome Ass'n v. Denktas*, 16 Cal.Rptr.2d 816, 819 (Ct. App. 1993) (trial court improperly relied on party's "obstreperous behavior and uncompromising litigation stance" to find there was no prevailing party); *cf. Bruckman v. Parliament Escrow Corp.* 235 Cal.Rptr. 813, 817 (Ct. App. 1987) (stating that party's failure to offer to compromise did not

6

affect that party's right to attorney fees under section 1717).

Plaintiffs maintained that IBT agreed to pay them 72% of the entire freight rate and fees charged to customers and 100% of the customer fuel surcharge – even if they only performed one leg of a delivery and only a portion of the services in connection with a job. *Maradiaga*, 899 F.Supp.2d at 557. IBT denied it ever agreed to compensate Plaintiffs at the 72% gross rate, characterizing such a theory of compensation as "illogical." On summary judgment, the District Court adopted IBT's construction and held that Plaintiffs are not entitled to payment for services they did not perform. *Id.* at 571. The District Court further limited the scope of Plaintiffs' contract claim by holding that some of Plaintiffs claims were barred by limitations. The only claims that survived summary judgment were Plaintiffs' contract claims for (1) 100% of the customer fuel surcharge for compensation that was due and owing to Plaintiffs from May 21, 2008, to present; and (2) 72% of the amounts IBT charged its customers for services actually performed by Plaintiffs for compensation that was due and owing to Plaintiffs from May 21, 2006, to present. Following mediation, Martinez recovered $5,652 on a claim he had previously valued in excess of $22,000, and Maradiaga's bankruptcy estate recovered only $11,304. Plaintiffs clearly did not achieve a complete victory on their contract claims. Indeed, the Court finds that, on balance, Plaintiffs did not achieve "greater relief" than IBT. Therefore, Plaintiffs are not "prevailing parties on the contract" for purposes of section 1717 of the California Civil Code and are not entitled to any award of attorneys' fees. See *Hsu*, 891 P.2d at 812 (explaining that a determination of no prevailing party typically results when the ostensibly prevailing party receives only part of the relief sought.); *Deane Gardenhome Ass'n*, 16 Cal.Rptr.2d 818 (where a judgment is considered "good news and bad news" as to each of the parties, there is no prevailing party, and an award of fees is not appropriate).

## RECOMMENDATION

For the foregoing reasons, the Court finds that Plaintiffs are not prevailing parties under California Civil Code section 1717 and are not entitled to attorneys' fees under the Leases. The Court thus recommends that the District Court DENY Plaintiffs' Motion for Attorneys' Fees and Costs (Doc. 141) in its entirety.

SO RECOMMENDED, August 20, 2013.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

8

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a de novo determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).